Filed 10/19/21  P. v. Yuriar CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE YURIAR,<br><br>    Defendant and Appellant. | B305575<br><br>(Los Angeles County<br>Super. Ct. No. BA038224) |

APPEAL from an order of the Superior Court of Los Angeles County, Raul A. Sahagun, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

In 1993, a jury convicted Jose Yuriar of the first degree murder of an undercover police officer, and found true the special circumstance allegation that the murder was committed while Yuriar was engaged in the commission of attempted robbery. In 2019, Yuriar petitioned for vacation of his murder conviction and resentencing pursuant to Penal Code section 1170.95.[1] The trial court denied the petition, and Yuriar appeals. We conclude that although the trial court erred by failing to appoint counsel for Yuriar, the error was harmless. We therefore affirm the order.

**FACTUAL AND PROCEDURAL BACKGROUND[2]**

1. *The murder, Yuriar's conviction, and original appeal*

In May and June of 1990, Fullerton police officers were conducting a "reverse sting" operation involving a large quantity of cocaine.[3] A confidential informant facilitated discussions between undercover officer Tommy DeLaRosa and potential purchasers. After numerous meetings and phone calls involving multiple people, Jose Rodriguez agreed to buy 200 kilos of cocaine. The exchange was set to take place at a residence on Arrington in Downey. On the afternoon of June 21, 1990, DeLaRosa drove with Rodriguez, in a van containing the cocaine, to the Arrington residence. Several police officers followed them,

---

[1] All further undesignated statutory references are to the Penal Code.

[2] We derive the factual and procedural background in part from our unpublished opinion in this case, of which we have taken judicial notice at respondent's request. (Evid. Code, §§ 451, 459.)

[3] A "reverse sting" occurs when police officers pose as sellers of previously seized narcotics.

keeping their distance to avoid detection; 25 additional officers and a police helicopter conducted surveillance of the men as they approached the house. The Arrington property was comprised of two houses, separated by a patio. When DeLaRosa walked down the driveway and into the house, he disappeared from the view of the surveilling officers. He was immediately ambushed by Rodriguez and persons inside the residence, including Yuriar and codefendants Jesus Araclio and Raul Meza. Shot five times, DeLaRosa succumbed to his injuries. Before he died, he was able to return fire, killing Rodriguez and wounding Yuriar and Araclio.

Immediately after the shooting, Araclio and Yuriar ran across the street to a neighbor's home and entered without knocking. Despite the neighbor's command to get out, they hid in a bathroom after stowing a Colt Super .38-automatic handgun and a sawed-off Browning pump action shotgun in the neighbor's bedroom. Police discovered the men and the guns in the house.

The evidence showed Rodriguez fired nine shots from a nine-millimeter gun, hitting DeLaRosa at least twice. Araclio fired the Colt Super .38-automatic four times. Yuriar fired the shotgun once. Meza also fired shots, using a gun that police later found in a nearby dumpster.

Yuriar's jury was instructed on felony murder, aiding and abetting, and a robbery-murder special circumstance allegation. It was not instructed on the natural and probable consequences doctrine.

The jury convicted Yuriar of first degree murder (§ 187, subd. (a)) and attempted robbery (§§ 664, 211), and found true the special circumstance allegation that the murder was committed during commission of an attempted robbery (§ 190.2,

subd. (a)(17)(A)).  It also found Yuriar personally used a firearm in commission of the offenses (§ 12022.5, subd. (a)) and that a principal was armed with a firearm (§ 12022, subd. (a)(1)).  The trial court sentenced Yuriar to life in prison without the possibility of parole (LWOP), plus four years.

A different panel of this Division affirmed Yuriar's convictions in 1996.  (*People v. Meza et al.* (Feb. 27, 1996, B090632) [nonpub. opn.].)  Among other things, the court rejected the contention that the trial court committed instructional error by failing to define "reckless indifference" in the jury instruction on the special circumstance allegation.  The court held that there was no sua sponte duty to define "reckless indifference," a phrase commonly understood to mean conscious disregard for the possibly fatal consequences of one's actions.

The court further reasoned:  "From the evidence in the present case, it appears appellants actively participated in the killing of DeLaRosa by ambushing him in a cross-fire, and clearly, they intended to kill him.  They were not minor participants without the criminal intent to kill."  "[A]lthough appellants were charged with a special circumstance which made them eligible for the death penalty, the jury chose not to impose such a sentence, and any error, *if there was one, was harmless beyond a reasonable doubt, since, under the circumstance*[s]*, the verdict could not have been affected.*  [Citation.]  Meza was an actual killer and Yuriar and Araclio were, if anything, aiders and abettors, not only to the robbery, but to the murder of DeLaRosa.  DeLaRosa was killed within minutes of his arrival on the premises.  The people shooting, including Yuriar and Araclio, intended to kill him immediately so they could take the cocaine they thought was in his van.  Both Yuriar and Araclio fired at

4

DeLaRosa as he ran from the house after the shooting began. Appellants did not act merely with reckless indifference to human life, and from the evidence, no reasonable jury could have found this to be true.  Clearly, appellants subjectively appreciated and knew their acts were likely to result in DeLaRosa's death."  (Italics added.)

*People v. Meza* further concluded that the evidence was sufficient to support the true finding on the special circumstance allegation, reiterating:  "When DeLaRosa finally arrived at the house where the cocaine was to be transferred, appellants were armed and clearly [a]waiting his arrival.  DeLaRosa was killed within minutes of his arrival in a cross-fire of bullets.  Contrary to appellants' argument, there was sufficient evidence, together with the reasonable inferences therefrom, for the jury properly to conclude appellants knew DeLaRosa possessed a substantial amount of cocaine and that they intended to kill him in order to take it from him by force against his will and were, therefore, guilty of attempted robbery and murder in the course of the attempted robbery."  The court relied on the same reasoning in holding that the trial court did not err by denying codefendants' section 1118.1 motion.

2. *The section 1170.95 petition*

In October 2019, after passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), Yuriar filed a petition for vacation of his murder conviction and resentencing.  Using a preprinted form, he checked boxes stating that he had been convicted of murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; he was not the actual killer; he did not, with the intent to kill, aid and abet the actual killer; he was not aware the victim was a peace officer

5

acting in the performance of his duties; and he could not now be convicted of first degree felony murder in light of changes to section 189 effectuated by Senate Bill 1437.  He also checked a box requesting that counsel be appointed for him.

The People filed an opposition to the petition, arguing that Senate Bill 1437 was unconstitutional and in any event, Yuriar was ineligible because, as stated in this court's prior opinion, the jury's true finding on the special circumstance allegation indicated he was either a direct aider and abettor who acted with the intent to kill or was a major participant who acted with reckless indifference.

On February 28, 2020, the trial court summarily denied the petition.  Yuriar was not present, and was not represented by counsel.  The court found Yuriar ineligible for relief because the "facts as set forth in the Court of Appeal decision in this matter show that the Defendant was either a direct aider and abettor to the robbery or to the murder itself."  After briefly summarizing the facts of the case as described in the prior opinion, it continued:  "The Court of Appeal found that Petitioner was an aider and abettor to both the killing and the robbery.  The Court of Appeal found that Petitioner acted with reckless indifference to life.  [¶]  Based on the above facts as set forth in the decision by the Court of Appeal, the Petitioner has failed to show a prima facie case for relief."

Yuriar timely appealed the trial court's order.

## DISCUSSION

Yuriar contends that the trial court erred by summarily denying his petition without appointing counsel for him, and by improperly concluding the jury's special circumstance finding precluded section 1170.95 relief.

6

1. *Applicable legal principles*
   a. *Senate Bill 1437*

Senate Bill 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843; *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*)).

Prior to Senate Bill 1437's enactment, under the felony-murder rule "a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247–248; *People v. Powell* (2018) 5 Cal.5th 921, 942.) Similarly, under the natural and probable consequences doctrine, a defendant was "liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*Lamoureux*, at p. 248.)

Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d). (*People v. Gentile, supra*, 10 Cal.5th at p. 842.) Subdivision (e) does not

7

apply when the defendant knew or should have known the victim was a peace officer engaged in the performance of his or her duties.[4]  (§ 189, subd. (f).)  Senate Bill 1437 also amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."

  b.  *Section 1170.95's petitioning procedure*

Senate Bill 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a now-invalid felony-murder or natural and probable consequences theory may petition for vacation of their convictions and resentencing.  A defendant is eligible for relief under section 1170.95 if he or she meets three conditions:  he or she (1) must have been charged with murder by means of a charging document that allowed the prosecution to proceed under a felony murder or natural and probable consequences theory; (2) must have been "convicted of first or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder"; and (3) could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 effectuated by Senate Bill 1437.  (§ 1170.95, subd. (a).)

To obtain section 1170.95 relief, the defendant must file a petition with the court that sentenced him or her, averring the foregoing, and must serve it upon the district attorney or the

---

[4]  Yuriar averred in his petition that he did not know the victim was a police officer.  The People did not contend otherwise, presumably because DeLaRosa was operating in an undercover capacity.

prosecuting agency and the public defender or the attorney who represented petitioner at trial.  The petition must contain (1) a "declaration by the petitioner that he or she is eligible for relief under [section 1170.95], based on all the requirements of subdivision (a)"; (2) the superior court case number and year of conviction; and (3) an indication of whether the petitioner requests counsel.  If any of this information is missing and cannot be readily ascertained by the court, it may deny the petition without prejudice.  (§ 1170.95, subd. (b).)

Recently—and after the trial court's ruling in the instant matter—our Supreme Court resolved a split of authority in the appellate courts and clarified the proper procedure for the evaluation of a section 1170.95 petition.  The defendant is entitled to the appointment of counsel, if requested, upon the filing of a facially sufficient petition, that is, one that makes the necessary averments, without regard to his or her eligibility for relief.  (*Lewis*, *supra*, 11 Cal.5th at p. 957.)  Section 1170.95 contemplates one, rather than two, prima facie reviews, and does not allow for summary denial based on a petitioner's ineligibility prior to the appointment of counsel.  (*Lewis*, at pp. 957, 961–963.)  The logical sequence, *Lewis* reasoned, is as follows: "a complying petition is filed; the court appoints counsel, if requested; the issue is briefed; and then the court makes one (not two) prima facie determination."  (*Id.* at p. 966.)

After the appointment of counsel and the opportunity for briefing, when determining whether the defendant has made a prima facie showing of entitlement to relief, the court may consider the record of conviction.  (*Lewis*, *supra*, 11 Cal.5th at pp. 957, 960, 970–971.)  "Appellate opinions . . . are generally considered to be part of the record of conviction."  (*Id.* at p. 972.)

9

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Id.* at p. 971.)

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' [Citation.]" (*Lewis*, *supra*, 11 Cal.5th at p. 971.) In reviewing any part of the record "at this preliminary juncture," a trial court may not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.)

If the trial court determines that the petitioner has made such a prima facie showing, it must issue an order to show cause and "then must hold a hearing 'to determine whether to vacate

10

the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' (§ 1170.95, subd. (d)(1).)" (*Lewis*, *supra*, 11 Cal.5th at p. 960.) In making that determination, the prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence. (§ 1170.95, subd. (d)(3); *Lewis*, at p. 960.) At the subdivision (d) hearing, the prosecution has the burden to prove the petitioner's ineligibility beyond a reasonable doubt. (§ 1170.95, subd. (d)(3).)

    2. *Contentions*

    Yuriar contends his petition satisfied the statutory criteria to make a prima facie showing of eligibility for relief under section 1170.95. Therefore, he asserts, the superior court erred by ruling he was ineligible as a matter of law "apparently based on the court's assumption that the robbery-murder special circumstance true finding showed as a matter of law that appellant is ineligible for relief." Because the special circumstance finding predated the California Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), he asserts that it does not show his ineligibility as a matter of law. Instead, he urges that the court should have appointed counsel, permitted briefing, and conducted an evidentiary hearing at which the parties could offer new evidence.

    In a supplemental brief,[5] the People acknowledge that under *Lewis*, the trial court erred by summarily denying the

---

[5]     We invited the parties to submit supplemental briefs after issuance of *Lewis*, and they have done so.

11

petition without appointing counsel, but contend that the error was harmless. They point out that the trial court did not deny the petition based on the existence of the jury's special circumstance finding, but instead based its decision on this court's prior opinion. They contend that the trial court's ruling was correct for two reasons. First, the trial court's stated basis for denying the petition was correct because this court's prior opinion found, beyond a reasonable doubt, that Yuriar was a direct aider and abettor who acted with the intent to kill, and this holding is the law of the case. Second, the jury's special circumstance finding rendered Yuriar ineligible for section 1170.95 relief as a matter of law.

The People are correct that the superior court did not expressly rely on the special circumstance as the basis for its denial. However, we " 'review the ruling, not the court's reasoning, and, if the ruling was correct on any ground, we affirm.' " (*People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12.) As explained *post*, we conclude the true finding on the special circumstance allegation precludes relief. Therefore we do not reach the question of whether the court properly relied on the conclusions cited in this court's prior opinion.[6]

---

[6] We also do not reach Yuriar's contention that a trial court cannot, at either the prima facie or the evidentiary hearing stage, rely on the fact substantial evidence in the record supports the murder conviction on a theory that remains valid after Senate Bill 1437. That issue, insofar as it pertains to the standard applicable at a section 1170.95, subdivision (d)(3) hearing, is currently before our Supreme Court. (*People v. Duke* (2020) 55 Cal.App.5th 113, 123, review granted Jan. 13, 2021, S265309.)

3. *The failure to appoint counsel is subject to harmless error analysis under the* Watson *standard*

*Lewis* compels the conclusion that the trial court erred by summarily denying the petition without appointing counsel for Yuriar and considering briefing by both parties.  Contrary to Yuriar's arguments in his opening brief—filed before *Lewis* issued—this misstep was not structural error requiring per se reversal.  *Lewis* considered and rejected the argument that evaluation of a section 1170.95 petition constitutes a "critical stage" of a criminal prosecution.  (*Lewis*, *supra*, 11 Cal.5th at pp. 972–973.)  "There is no unconditional state or federal constitutional right to counsel to pursue collateral relief from a judgment of conviction."  (*Id.* at p. 972.)  Instead, at the section 1170.95, subdivision (c) stage, the right to counsel is purely statutory.  (*Lewis*, at p. 973.)  Therefore, "deprivation of [the] right to counsel under subdivision (c) of section 1170.95 [is] state law error only, tested for prejudice under *People v. Watson* (1956) 46 Cal.2d 818."  (*Id.* at pp. 957–958.)  To establish reversible error under the *Watson* standard, a defendant must " 'demonstrate there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.' "  (*Id.* at p. 974.)

We turn to that question.

4. *Because Yuriar is ineligible for relief as a matter of law, he cannot establish prejudicial error*

To be eligible for resentencing, Yuriar was required to show that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189" made by Senate Bill 1437.  (§ 1170.95, subd. (a)(3).)  Under section 189, as amended, a defendant can be convicted of felony murder if he was the actual

killer; acted as a direct aider and abettor with the intent to kill; or was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 189, subd. (e).)

As noted, the jury found true the special circumstance allegation that the murder was committed during an attempted robbery. (§ 190.2, subd. (a)(17)(A)). The jury was instructed as follows: " 'If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider or abettor, you cannot find the special circumstance to be true, as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, requested, or assisted any actor in the commission of the murder in the first degree, or with reckless indifference to human life and as a major participant, aided, abetted, requested, or assisted in the attempted commission of the crime of robbery which resulted in the death of a human being, namely Tommy DeLaRosa.' "

The jury's true finding on the special circumstance therefore demonstrates Yuriar is ineligible for section 1170.95 relief as a matter of law. As recently explained by *People v. Simmons*: "Section 189, as amended by Senate Bill No. 1437, . . . now permits a felony-murder conviction only when specified facts relating to the defendant's individual culpability have been proved. Among such circumstances, a felony-murder conviction is permissible if the defendant was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of section 190.2. (§ 189, subd. (e).) [In *Simmons*], the jury found true a felony-murder special circumstance pursuant to section 190.2, subdivision (a)(17)(A), which imposes a sentence of death or life without the

14

possibility of parole for a murder committed during the commission, or attempted commission, of a robbery.  [Citation.] To make such a finding, the jury was required to find that petitioner acted 'with reckless indifference to human life and as a major participant' in aiding or abetting the commission of the underlying felony.  [Citations.]  In other words, '[t]he language of the special circumstance tracks the language of Senate Bill [No.] 1437 and the new felony-murder statutes.'  [Citation.]  Thus, by finding the special circumstance true, the jury made the requisite findings necessary to sustain a felony-murder conviction under the amended law.  Petitioner is therefore ineligible for resentencing under section 1170.95 as a matter of law." (*People v. Simmons* (2021) 65 Cal.App.5th 739, 746–747, review granted Sept. 1, 2021, S270048; see *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1141, review granted Oct. 14, 2020, S264284 ["By finding a special circumstance allegation true, the jury makes precisely the same finding it must make in order to convict a defendant of felony murder under the new law.  Because a defendant with a felony-murder special circumstance could still be convicted of murder, he is ineligible as a matter of law to have his murder conviction vacated."]; *People v. Jones* (2020) 56 Cal.App.5th 474, 482, review granted Jan. 27, 2021, S265854; *People v. Gomez* (2020) 52 Cal.App.5th 1, 15, review granted Oct. 14, 2020, S264033; *People v. Murillo* (2020) 54 Cal.App.5th 160, 167–168, review granted Nov. 18, 2020, S264978; *People v. Allison* (2020) 55 Cal.App.5th 449, 457 (*Allison*); *People v. Nunez* (2020) 57 Cal.App.5th 78, 91, review granted Jan. 13, 2021, S265918.)

Yuriar argues that the jury's special circumstance finding is not preclusive in his case, because it predated our Supreme

15

Court's decisions in *Banks* and *Clark*. "*Banks* and *Clark* 'clarified "what it means for an aiding and abetting defendant to be a 'major participant' in a crime who acted with a 'reckless indifference to human life.' " ' [Citation.] *Banks* identified certain factors to consider in determining whether a defendant was a major participant; *Clark* identified factors to guide the determination of whether the defendant acted with reckless indifference to human life." (*People v. Gomez, supra,* 52 Cal.App.5th at p. 13, fn. 5, rev.gr.)

The appellate courts are split on the question of whether a pre-*Banks* and *Clark* special circumstance finding makes a petitioner ineligible for section 1170.95 relief as a matter of law, and the issue is on review before our Supreme Court. (See *People v. Strong* (S266606, review granted March 10, 2021; *People v. Jones, supra,* 56 Cal.App.5th at pp. 478–479, rev.gr. [collecting cases].)

Some courts have concluded that such a special circumstance does not, by itself, render a petitioner ineligible for relief. (See *People v. Torres* (2020) 46 Cal.App.5th 1168, 1178, review granted June 24, 2020, S262011.) *Torres* reasoned that *Banks* and *Clark* "construed section 190.2, subdivision (d) in a significantly different, and narrower manner than courts had previously construed the statute." (*Id.* at p. 1179.) "Accordingly, in determining if [petitioner] could be convicted today of first degree murder, we cannot simply defer to the jury's pre-*Banks* and *Clark* factual findings that [petitioner] was a major participant who acted with reckless indifference to human life as those terms were interpreted at the time." (*Ibid.*) "No court has affirmed the special circumstances findings at issue post-*Banks* and *Clark*. There is therefore a possibility that [the petitioner]

16

was punished for conduct that is not prohibited by section 190.2 as currently understood, in violation of [petitioner's] constitutional right to due process."  (*Id.* at p. 1180, fn. omitted; see *People v. Gonzalez* (2021) 65 Cal.App.5th 420, 429–431, review granted Aug. 18 2021, S269792; *People v. Harris* (2021) 60 Cal.App.5th 939, 957, review granted April 28, 2021, S267802 [pre-*Banks/Clark* special circumstance finding, without more, does not preclude relief under section 1170.95]; *People v. Smith* (2020) 49 Cal.App.5th 85, 93, review granted July 22, 2020, S262835; *People v. York* (2020) 54 Cal.App.5th 250, 258, review granted Nov. 18, 2020, S264954 [pre-*Banks/Clark* special circumstance finding "cannot preclude eligibility for relief under . . . section 1170.95 *as a matter of law*, because the factual issues that the jury was asked to resolve" in such a case "are not the same factual issues our Supreme Court has since identified as controlling."]; cf. *People v. Secrease* (2021) 63 Cal.App.5th 231, 247, 254–256, 259–261, review granted June 30, 2021, S268862 [adopting a "middle ground" in which pre-*Banks/Clark* special circumstance does not bar section 1170.95 relief as a matter of law absent a judicial determination that evidence was sufficient under those cases, but requiring courts hearing the petition and any ensuing appeal to determine sufficiency of the evidence under *Banks* and *Clark*]; *People v. Pineda* (2021) 66 Cal.App.5th 792, 795, 801, review granted Sept. 29, 2021, S270513 [following *Secrease*]; *People v. Arias* (2021) 66 Cal.App.5th 987, 991, 1003–1004, review granted Sept. 29, 2021, S270555 [same].)

As noted, other courts hold that a pre-*Banks* and *Clark* special circumstance finding bars section 1170.95 relief as a matter of law.  They reason that section 1170.95 was not meant to be an avenue for an attack on the sufficiency of the evidence to

support a special circumstance finding (see, e.g., *Allison, supra*, 55 Cal.App.5th at pp. 453, 461), and a defendant seeking to challenge the sufficiency of the evidence to prove a pre-*Banks* and *Clark* major participant or reckless indifference finding must do so via a petition for writ of habeas corpus. (*People v. Gomez, supra*, 52 Cal.App.5th at pp. 16–17, rev.gr.; *People v. Galvan, supra*, 52 Cal.App.5th at p. 1142, rev.gr.; *People v. Jones, supra*, 56 Cal.App.5th at p. 483, rev.gr.; *People v. Nunez, supra*, 57 Cal.App.5th at p. 96, rev.gr.)

In support of this view, some cases point out that *Banks* and *Clark* did not state a new rule of law, but merely clarified the already-existing meaning of "major participant" and "reckless indifference," terms that do not have specialized definitions and are interpreted as used in common parlance. (*Allison, supra*, 55 Cal.App.5th at pp. 458–459; *People v. Jones, supra*, 56 Cal.App.5th at pp. 482, 484, rev.gr.; *People v. Nunez, supra*, 57 Cal.App.5th at p. 92, rev.gr.) While optional language was added to the pattern jury instructions after *Banks* and *Clark*, "no mandatory language or material changes were made to the CALCRIM special circumstances instructions," and there is no requirement that juries be instructed on the *Banks/Clark* clarifications. (*Nunez*, at pp. 92–93; *Jones*, at p. 484; *Allison*, at pp. 458–459.) Thus, the argument that a pre-*Banks/Clark* special circumstance finding must be presumed invalid exaggerates the impact of *Banks* and *Clark*. (See *Allison*, at p. 458; *Jones*, at p. 484.) There is "no basis to conclude as a general matter that a pre-*Banks* and *Clark* jury was instructed differently than a post-*Banks* and *Clark* jury, or resolved different factual issues, answered different questions, or applied different standards." (*Nunez*, at p. 94).

As *People v. Simmons* recently observed, "*Banks* and *Clark* did not state a new rule of law.  Rather, they relied on the United States Supreme Court's decisions in *Enmund v. Florida* (1982) 458 U.S. 782 and *Tison v. Arizona* (1987) 481 U.S. 137 to clarify principles that had long been in existence at the time petitioner was convicted." (*People v. Simmons, supra*, 65 Cal.App.5th at p. 749.)  "To the extent *Banks* and *Clark* illuminated factors a fact finder might consider in determining whether a defendant was a major contributor who acted with reckless indifference to human life, they drew those factors from *Enmund* and *Tison*. [Citations.]  These principles existed when petitioner was convicted and, absent a determination on direct appeal or in habeas that the evidence was insufficient to support the jury's finding, there is no basis to conclude petitioner's jury applied different standards than those described in *Banks* and *Clark*." (*Ibid*.)

Additionally, this line of authority reasons that the opposite approach is inconsistent with the plain language of section 1170.95, because a defendant claiming ineligibility based on *Banks* and *Clark* does not meet the statutory requirement that he or she cannot be convicted *because of* changes to sections 188 or 189 made by Senate Bill 1437. (*People v. Jones, supra*, 56 Cal.App.5th at p. 484, rev.gr.)  "In order to be eligible for resentencing, a defendant must show that he or she 'could not be convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective' as part of Senate Bill No. 1437.  (§ 1170.95, subd. (a)(3).)  [¶] . . . Although [petitioner] is asserting that he could not now be convicted of murder, the alleged inability to obtain such a conviction is not 'because of changes' made by Senate Bill No. 1437, but because of the

19

clarification of the requirements for the special circumstance finding in *Banks* and *Clark*.  Nothing about those requirements changed as a result of Senate Bill No. 1437.  Just as was the case before that law went into effect, the special circumstance applies to defendants who were major participants in an underlying felony and acted with reckless indifference to human life." (*People v. Galvan*, *supra*, 52 Cal.App.5th at p. 1142, rev.gr.; *People v. Murillo*, *supra*, 54 Cal.App.5th at p. 168, rev.gr.; *Allison*, *supra*, 55 Cal.App.5th at p. 460; *People v. Nunez*, *supra*, 57 Cal.App.5th at pp. 94–95, rev.gr.)

Further, in concluding that the proper vehicle to challenge a pre-*Banks* and *Clark* special circumstance finding is a petition for writ of habeas corpus, courts point to the different burdens involved in a habeas petition and a section 1170.95 petition.  A defendant challenging a pre-*Banks/Clark* special circumstance finding on direct appeal or by means of a writ of habeas corpus must show that the record contains insufficient evidence to prove he or she acted as a major participant or with reckless indifference.  (*People v. Jones*, *supra*, 56 Cal.App.5th at pp. 482–483, 485, rev.gr.; *People v. Galvan*, *supra*, 52 Cal.App.5th at pp. 1142–1143, rev.gr.)  "By contrast, a petitioner who demonstrates a prima facie case for relief under section 1170.95 has shifted the burden to the People to prove beyond a reasonable doubt that they are ineligible for resentencing (that is, they still *could be* convicted of murder despite the change to the felony-murder rule in § 189).  [Citation.] . . . .  [T]he *Torres/Smith/York* line of cases would read into section 1170.95 a new procedure allowing petitioners to ignore a special circumstance finding—no matter how well supported in the record—as well as the recognized method of challenging it.  Such petitioners would be

20

allowed to relitigate a prior jury finding at an evidentiary hearing where the prosecution bears the burden of proving the truth of the finding, beyond a reasonable doubt, a second time." (*Jones*, at p. 485.) Allowing petitioners to challenge a special circumstance finding via a section 1170.95 petition would give them an advantage over similarly situated defendants, based on the date of their convictions. (*Galvan*, at pp. 1142–1143; see *People v. Nunez*, *supra*, 57 Cal.App.5th at pp. 96–97, rev.gr.)

Such a procedure is inconsistent with the Legislature's intent. "The Legislature made plain that its purpose in enacting section 1170.95 was to give defendants the benefit of the amendments to sections 188 and 189 in the absence of a factual basis for a murder conviction in light of the statutory revisions. But there is no indication in the statute's text or history of any legislative intent to permit defendants to challenge their murder convictions by attacking prior findings of fact." (*People v. Nunez*, *supra*, 57 Cal.App.5th at p. 95, rev.gr.; *Allison*, *supra*, 55 Cal.App.5th at p. 461.)

While we acknowledge that both of the foregoing lines of authority are not without force, we find more persuasive those cases holding that a jury's section 190.2, subdivision (a)(17) special circumstance finding precludes relief as a matter of law. Accordingly, we conclude that the record of conviction reflects Yuriar's ineligibility as a matter of law, without the need for factfinding or credibility determinations, and the petition was properly denied. (See *Lewis*, *supra*, 11 Cal.5th at p. 971.)[7]

---

[7] The People assert that, even if a jury's pre-*Banks* and *Clark* true finding on a special circumstance allegation is not automatically preclusive, we may conduct our own evaluation of the evidence to determine whether it supports such a finding in

21

Because counsel's assistance could not have changed this fact, the failure to appoint counsel was harmless.

Yuriar makes several arguments in support of his contention that the jury's special circumstance finding does not preclude section 1170.95 relief. He urges that the line of cases finding a special circumstance precludes relief are "based on the doctrine of collateral estoppel." Under collateral estoppel principles, he contends, a pre-*Banks* and *Clark* special circumstance finding cannot preclude relief because the issues at trial and in the section 1170.95 proceeding are not identical, given that *Banks* and *Clark* clarified the major participant/reckless indifference standard. (See *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [collateral estoppel applies only if the issue sought to be precluded is identical to that decided in a former proceeding]; *Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034, 1042.) And, he argues that if

_____

light of *Banks* and *Clark*. And, they argue, the evidence here satisfied the *Banks/Clark* standard. The appellate courts have adopted divergent positions on this question. (Compare *People v. Murillo, supra,* 54 Cal.App.5th at p. 163, rev.gr. [denial proper where record of conviction showed as a matter of law that the special circumstance finding was valid even under *Banks* and *Clark*]; *People v. Arias, supra,* 66 Cal.App.5th at pp. 1004–1005, rev.gr. [appellate court must conduct an individualized review of record to determine whether special circumstance finding satisfies *Banks* and *Clark*], with *People v. Smith, supra,* 49 Cal.App.5th at pp. 95–96, rev.gr. [appellate court may not conduct its own assessment of the trial evidence to determine whether defendant was a major participant who acted with reckless indifference to human life].) Given our conclusion that the special circumstance finding renders Yuriar ineligible as a matter of law, we do not address this issue.

22

collateral estoppel barred relitigation of a pre-*Banks/Clark* finding, then habeas petitions challenging the sufficiency of the evidence to prove a special circumstance finding would be barred as well; yet such is not the case. (See *In re Scoggins* (2020) 9 Cal.5th 667, 673 [habeas petition not procedurally barred; "[w]here a decision clarifies the kind of conduct proscribed by a statute, a defendant whose conviction became final before that decision 'is entitled to post-conviction relief upon a showing that his [or her] conduct was not prohibited by the statute' as construed in the decision"].)

But, contrary to Yuriar's assertion, the decisions holding a special circumstance finding bars section 1170.95 relief do not turn on application of the collateral estoppel doctrine. Instead, as we have explained, such decisions variously hold that section 1170.95 was not meant to be an avenue for a collateral attack on the sufficiency of the evidence to support the special circumstance finding (*Allison*, *supra*, 55 Cal.App.5th at p. 461); that a showing of ineligibility must be based on changes to sections 188 and 189, a requirement that is unmet based only on a *Banks/Clark* challenge (*People v. Murillo*, *supra*, 54 Cal.App.5th at p. 168, rev.gr.); and allowing a *Banks/Clark* challenge to be considered on a section 1170.95 petition would give petitioners an advantage over similarly situated defendants based only on the date of their convictions (*People v. Galvan*, *supra*, 52 Cal.App.5th at pp. 1142–1143, rev.gr.). This reasoning that *Banks* and *Clark* did not state a new rule of law is aimed, not at showing a collateral estoppel bar to section 1170.95 relief, but at demonstrating a pre-*Banks/Clark* special circumstance should not be presumed invalid.

We are also unpersuaded by Yuriar's contention that, at trial—conducted pre-*Banks* and *Clark*—he did not have the same incentive to minimize his involvement and it was less likely that clarifying instructions would have been requested or given. Since the jury was considering his intent and involvement in the crimes, we are hard pressed to imagine a scenario in which, as a practical matter, he would have declined to present evidence or failed to request modifications to the instructions if such would have actually assisted him. (See *Allison, supra*, 55 Cal.App.5th at p. 459 [petitioner would have had "same incentive at his original trial to attempt to minimize his involvement in the robbery and his culpability for the killings as he would have had if his trial had taken place after *Banks* and *Clark*."].)

Yuriar also argues that under section 1170.95, neither party is limited to the existing record, but may present new or different evidence. But the opportunity to present such additional evidence only comes into play at the section 1170.95, subdivision (d)(3) hearing—which only occurs *after* the prima facie determination. Indeed, were it otherwise, challenges to the jury's verdicts would appear limitless and no jury finding would ever be preclusive. Under Yuriar's interpretation, it would appear that a defendant could present "new evidence" suggesting that he was not the actual killer, he was misidentified, witnesses were not credible, or the like. (See *Allison, supra*, 55 Cal.App.5th at p. 461.) It is not "reasonable to interpret section 1170.95 as allowing for such challenges, namely, challenges based on attacks on prior factual findings. Nothing in the language of section 1170.95 suggests it was intended to provide redress for allegedly erroneous prior factfinding. In particular, subdivision (a)(3) of section 1170.95 says nothing about erroneous prior findings or

24

the possibility of proving contrary facts if given a second chance. Rather, it requires that the petitioner could not be convicted of murder *because of the changes to sections 188 and 189*, not *because a prior fact finder got the facts wrong*.  The purpose of section 1170.95 is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*Allison*, at p. 461.)

In sum, the jury's true finding on the special circumstance allegation demonstrates, as a matter of law, that Yuriar's murder conviction remains valid after the amendments to the law effectuated by Senate Bill 1437.  Because his petition was meritless as a matter of law, appointed counsel could have done nothing to obtain a more favorable result for him.  Accordingly, the trial court's failure to appoint counsel was harmless error, and its denial of the petition was proper.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

I concur:

EGERTON, J.

LAVIN, J., Dissenting:

I agree with Jose Yuriar that the jury's finding on the attempted robbery special-circumstance allegation does not necessarily preclude relief under Penal Code[1] section 1170.95 considering the Supreme Court's subsequent clarification in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 of the requirements for finding a felony-murder special-circumstance allegation true. "The Courts of Appeal have subjected the issue at hand to vigorous debate and devoted countless pages of discussion to the subject. The issue is currently under review by the Supreme Court as well, so we will soon have clarity one way or the other. (*People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted Mar. 10, 2021, S266606.)" (*People v. Arias* (2021) 66 Cal.App.5th 987, 1003–1004, review granted Sept. 29, 2021, S270555.) Accordingly, I need not add to the conversation with further argument or analysis. Suffice it to say I am persuaded by the logic of the courts that have concluded pre-*Banks* and *Clark* felony-murder special-circumstance findings do not categorically preclude defendants from obtaining resentencing relief under section 1170.95.

Further, I do not agree with the Attorney General that the trial court's error in summarily denying the petition was harmless under the principles set forth in *People v. Watson* (1956) 46 Cal.2d 818. The Supreme Court recently clarified in *People v. Lewis* (2021) 11 Cal.5th 952 that a trial court's authority at this stage of review is limited, in that it may not engage in factfinding

---

[1] Undesignated statutory references are to the Penal Code.

involving the weighing of evidence. (*Id.* at p. 972.) I decline the Attorney General's invitation to engage in that very exercise.

In sum, I would reverse the order and remand for further proceedings consistent with section 1170.95, subdivisions (c) and (d). I therefore respectfully dissent.


LAVIN, J.

2